Commonwealth, Appellant, *v.* Copertino.

64

Argued September 14, 1966. Before WRIGHT, WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (ERVIN, P. J., absent).

*Michael M. Baylson,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Vincent C. Veldorale,* for appellees.

OPINION BY JACOBS, J., November 17, 1966:

The Commonwealth appeals from the pretrial order of the Court of Quarter Sessions of Philadelphia County suppressing evidence obtained during a search of a two story row house at 7217 West Passyunk Avenue, Philadelphia. The Commonwealth will be substantially handicapped in the presentation of this case by the suppression of this evidence; thus its appeal at this time is proper. *Commonwealth v. Fisher,* 422 Pa. 134, 221 A. 2d 115 (1966).

On January 4, 1966 Officer Spaticini of the Philadelphia Police Department obtained a search warrant. The affidavit and warrant described the premises to be searched as "Passyunk Ave., 7217 W.—2 story dwelling

with store front." and listed Marie Ipri, John Dubois, Alfred Battipaglia and Silvo Lerro in the section entitled "Name of owner, occupant of premises and/or person to be searched." In the same document probable cause was given as follows: "Information has been received from a reliable source that an illegal lottery operation is being conducted inside 7217 W. Passyunk Ave. and that action is taken by telephone and carry into this location. In connection with info. a surveillance was made on 12/23/65, 12/24/65 and 1/3/66 between the hours 11:00 A.M. and 5:00 P.M. at night during which time one Alfred Battipaglia was observed entering at 11:00 A.M. and leave at 5:00 P.M. Also observed entering this premises during these times was one Silvo Lerro who would enter at 2:45 P.M. and leave at about 5:00 P.M. Both these men are known vice figures and are known to operate number banks."

On January 6, 1966 Spaticini and two other police officers executed the search warrant. The search resulted in the seizure of extensive evidence pertaining to the operation of a lottery, and the arrest of the appellees in this case on charges of setting up a lottery and establishing a gambling place as prohibited by Sections 601 and 605 of The Penal Code of 1939 (18 P.S. §4601 and §4605).

In fact, there were two separate apartments in 7217 West Passyunk Avenue, one on the first floor, and one on the second. The evidence was seized in the first floor apartment and the appellees were found and arrested there, although neither appellee lived there.

The lower court held the warrant was invalid because no probable cause was shown authorizing a search of the whole building. We agree.

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be

violated, and no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A similar provision was incorporated into Article I, §8, of the Constitution of Pennsylvania in the following language: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

Federal standards under the Fourth Amendment to the United States Constitution apply to the states by virtue of the Fourteenth Amendment and evidence obtained by a search and seizure which violates the Fourth Amendment is inadmissible in the state courts: *Commonwealth v. Smyser*, 205 Pa. Superior Ct. 599, 211 A. 2d 59 (1965).

In a case such as this the issue of probable cause to support the warrant and the issue of the particularity of the description of the place to be searched must be considered together since the scope of the warrant depends on the showing of probable cause.

In *Commonwealth v. Fiorini*, 202 Pa. Superior Ct. 88, 195 A. 2d 119 (1963), which appellant urges controls this case, we held that the warrant adequately described the place to be searched. A brief examination of *Fiorini* will show why it is not controlling. In *Fiorini* the warrant described the premises to be searched as ". . . that certain place, room, house, dwelling, building, store, restaurant, garage, receptacle, premises, occupied and in possession of one: Joseph V. Fiorini, alias John Doe, et al., to wit: A first floor pool room and a second floor apartment occupied by Joseph V. Fiorini, alias John Doe, et al., as such" and then listed the

street and number. There we held the description valid "since it definitely described the property and limits the search to those parts which were occupied by or in possession of this appellant." In the instant case the search was limited only by the street and number, which turned out to be a two-apartment building.[1]

Normally, separate living units of a multiple tenant building must be treated as if they were separate dwelling houses and probable cause must be shown to search each one. *United States v. Hinton,* 219 F. 2d 324 (7th Cir. 1955) ; see *Commonwealth v. Smyser,* supra. But there are two exceptions to that rule: a warrant directing the search of more than one living unit may be valid if there is cause to believe all are being used for the unlawful purposes involved, or there is cause to believe the premises covered by the warrant are being used as a single unit. *United States v. Poppitt,* 227 F. Supp. 73 (D.C. Del. 1964).

The Commonwealth's argument that there was no reason to believe this building was other than a single unit dwelling house is plainly contradicted by the facts. Spaticini himself testified that two persons, Ipri and Dubois, not the appellees, were listed as customers of the public utilities at that address, and placed both names on the warrant as owners or occupants. He testified that the same names were listed with the registration commission. He testified that there were two outside doors at the front of the building. This is not

_____

[1] The warrant named four persons, Marie Ipri, John Dubois, Alfred Battipaglia and Silvo Lerro, but these names did not limit the search to a particular part of the building. Battipaglia and Lerro, as appellees were known to police, were neither owners nor occupants of the building. Ipri and Dubois were named as occupants on a public utilities customer list, but according to that list constituted *all* the occupants of the building. Further, neither was a tenant at the time of the search, the notes of testimony revealing Caroline Bertotti as the first floor tenant and Anna Panko as the second floor tenant.

a case such as *United States v. Santore*, 290 F. 2d 51 (2d Cir. 1960), or *United States v. Poppitt*, supra, where there were no indications that the house to be searched was anything but a single family dwelling.

Was there a basis to believe the whole building was being used for the unlawful activities? Again, Spaticini's testimony precludes a decision favorable to the Commonwealth. He testified that only the first floor apartment was searched; that none of the officers went to the second floor where the other apartment was located; that one of the front doors led to the first floor and the other to the second floor and that the officers with him went in the door to the first floor. He was asked by the court below: "You knew exactly where you wanted to go?" and answered: "Yes, sir." Confronted with this testimony from which it appears that he was able to specify which apartment was involved, we cannot conclude that Spaticini had reason to believe the whole building was being used for the unlawful lottery operation.

Therefore, no probable cause was shown to support a warrant commanding the search of the entire building, and the warrant which commanded that search was invalid. The fact that only the first floor was actually searched will not validate the warrant which was illegal when issued. The validity of the warrant is dependent upon the facts shown at the time of its issuance. A warrant issued without probable cause, as this warrant was, violated the Fourth Amendment's mandate that "no warrants shall issue, but upon probable cause." *United States v. Hinton*, supra; *People v. Rainey*, 14 N.Y. 2d 35, 197 N.E. 2d 527 (1964); *United States v. Barkouskas*, 38 F. 2d 837, 838 (M.D. Pa. 1930). As was said in *Barkouskas*, ". . . we are not now concerned with that which happened after the search warrant was issued. We are concerned only with the search warrant itself and with the authority

it gave the officer to whom it was directed. It gave him authority to search the house of an innocent person without any attempt to show probable cause, which the Constitution of the United States (Amend. 4) intended to prevent."

Order affirmed.

DISSENTING OPINION BY WRIGHT, J.:

Our approach to problems involving the detection and prosecution of crime should be on the basis of common sense, not super technicality. The affidavit for the search warrant in the instant case discloses that the officer had reliable information that an extensive numbers operation was being conducted in a two-story dwelling at No. 7217 West Passyunk Avenue in the City of Philadelphia. The search resulted in the finding on the first floor of almost one-half million number plays. It is my view that the court below erred in striking down the warrant on the ground that it did not authorize a search of the first floor only. It is not indicated how the officer should have known, if such was actually the case, that the illegal activity was taking place on only one floor. Nor is consideration given to the fact that the appearance of the building justified the officer's belief that it was operated as a single unit. I would reverse with a procedendo.

WATKINS, J., joins in this dissent.