577 A.2d 913

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Norman WILSON.**

Superior Court of Pennsylvania.

Argued March 29, 1990.

Filed July 18, 1990.

Douglas J. Wright, Asst. Dist. Atty., Girard, for Com., appellant.

Caremela R.M. Presogna, Asst. Public Defender, Erie, for appellee.

Before TAMILIA, KELLY and CERCONE, JJ.

TAMILIA, Judge:

This is an appeal from the March 21, 1989 Order of court granting appellee's suppression motion. On September 24, 1988, police officers raided the house belonging to Willy Thompson in Erie, Pennsylvania, pursuant to a search warrant alleging illegal sales of alcoholic beverages and use of the residence as a "speakeasy." Appellee was one of several people who rented a room in the house. All boarders have a key to the outside door and have use of the common areas, but appellee's room had two locks for which only he had the keys. During the raid, the officers not only searched the basement where the speakeasy was alleged to be but also conducted a non-consensual search of appellee's room after kicking in the door. The police seized marijuana, Tussionex and liquor from appellee's room. The police then charged appellee with two counts of Violation of the Controlled Substance, Drug, Device and Cosmetic Act, with intent to deliver [1] and one count of presence or participation in disorderly house prohibited,[2] a summary offense. Appellee filed a motion to suppress the marijuana and Tussionex, which the trial court granted. The Commonwealth timely appealed certifying the effect of granting the suppression motion substantially handicaps its prosecution.

The Commonwealth contends the trial court erred in granting the suppression motion because the search warrant was validly issued. After a thorough review of the record, we agree with the Commonwealth the warrant was validly issued. However, we find the police improperly executed the warrant, and as such, appellee is entitled to have the fruits of the illegal search suppressed.

1. 35 P.S. § 780–113(a)(30).
2. Local Ordinance L0706.01.

The United States Supreme Court, in *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72, (1987), established the standard for determining whether a search warrant was properly executed in a case involving facts similar to those in the instant case. In *Garrison*, police officers obtained and executed a warrant to search Lawrence McWebb and the premises known as 2036 Park Avenue third floor apartment. The third floor was, in fact, divided into two apartments with McWebb occupying one and Garrison occupying the other. At the time of application for the warrant and execution of the warrant, the police reasonably believed there was only one apartment on the third floor. Only after they discovered the contraband did the police realize they were in Garrison's separate apartment. Thereupon, they immediately concluded the search.

The *Garrison* Court was called upon to determine if the seizure of contraband from Garrison's apartment violated the fourth amendment. The Court held the search was proper because the police officers reasonably believed they were searching the premises named in the search warrant—namely McWebb's apartment—when they seized the contraband, and because upon discovering there were two separate apartments, the police discontinued the search. However, the Court stated:

> If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant.

*Id.* at 86, 107 S.Ct. at 1018. The Court went on to say:

> [T]he validity of the search of respondent's apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable. Here it unquestionably was. The objective facts available to the officers at the time suggested no distinction between McWebb's apartment and the third floor premises.

*Id.* at 88, 107 S.Ct. at 1019.

In contrast, the facts of the instant case show the police officers knew appellee rented a room in the house. The Commonwealth concedes appellee told the police officers, prior to the search, he rented a room in the building and indicated which room was his (S.T., 3/21/89, pp. 55, 57, 61; Appellant's brief, pp. 5–6, 12). The Commonwealth points out that the officers kicked in the door to appellee's room prior to having this information, but we emphasize the search itself did not take place until *after* the officers knew it was appellee's rented room they were about to search. Furthermore, the police officers here did not discontinue their search upon realizing there were separate apartments as did the police officers in *Garrison.* The facts clearly illustrate the police officers had no objectively understandable and reasonable reasons for not realizing the overbreadth of the warrant upon its execution. As such, we conclude the trial court properly suppressed the evidence.

Order affirmed.

KELLY, J., dissents.

KELLY, Judge, dissenting:

I respectfully dissent. I find the Majority's reliance upon *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) misplaced. Moreover, accepting the trial court's findings of fact, I would still find that the search challenged was within the express authority of the properly issued warrant and that the execution of the warrant was entirely reasonable.

The inferences drawn by the Majority here, regarding the application of *Maryland v. Garrison, supra,* are grounded entirely upon an extension of *dicta,* rather than an application of precedent. In *Maryland v. Garrison, supra,* the Supreme Court held that because the officers did not know that separate apartments existed on the third floor when they executed their warrant, the warrant and its execution were reasonable, hence constitutional. In *dicta,* the Supreme Court suggested that had the officers known that the warrant was erroneously overbroad (covering a separate apartment of an entirely uninvolved third party), then continued execution of the warrant as to the part of the warrant known to be overbroad would have been unreasonable.

The relevant reasoning of the Supreme Court in *Maryland v. Garrison,* applied by the majority here, in fact, may be compelling as to the specific circumstances discussed in that case. Nonetheless, the *extension* of that reasoning to embrace the actual facts of the present case strains that reasoning beyond its bounds.

The pertinent facts of this case are as follows. Acting upon a tip from a confidential informant, Erie Police conducted an investigation as to whether an illegal speakeasy was being operated in a one story wood frame house located at 134 Myrtle Street in Erie, Pennsylvania. A controlled buy of alcohol was made by the confidential informant under the supervision of the investigating officers. Surveillance also confirmed a visitor pattern consistent with the operation of an illegal speakeasy. Because of the nature of the illegal conduct suspected, a night time search warrant for the entire premises was sought and received.

The warrant was executed on Saturday evening, September 24, 1988. To secure the premises, all rooms (including two separately locked bedrooms) were opened by the search team. *Cf. Maryland v. Buie,* —— U.S. ——, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The occupants were then confined to the downstairs recreation area (where the principal

speakeasy activities had been centered), and the first floor kitchen area.

In the recreation area and in the first floor kitchen area considerable evidence of illegal speakeasy activities was discovered. We note that small amounts of marijuana were found in a refrigerator and on a table in the common areas of the residence, as well.

Two of the individuals arrested in the raid acknowledged that they were the residents of the house, and were taken then to identify which of the locked bedrooms were theirs. Appellee was one of those two, and complains here that even though the warrant to search the house was valid, the search of his separately secured bedroom within the residence was not. The majority agrees. I cannot.

I have no disagreement with the basic proposition that if the police discover that a warrant was drawn so as to mistakenly include the private room of an uninvolved, third party who is a complete stranger to the probable cause set forth in the warrant (as discussed in *Maryland v. Garrison*), then the police ought not proceed to execute the warrant so as to unreasonably encroach upon the reasonable privacy expectations of that innocent and uninvolved third party. Such, however, was not vaguely the case here.

Here, two tenants shared a single family dwelling in common, with the exception of their separately locked bedrooms. On the premises, a *substantial, open, notorious,* and *continuous* criminal speakeasy enterprise was being conducted. When a lawful search warrant for the entire premises was executed and illegal activities were openly discovered in the common areas of the residence, both tenants were physically present in those common areas. Neither appellee nor the other tenant could even plausibly assert innocent and uninvolved third party status in this case. This fact I consider to be critical.

If the illegal activity had been discreet rather than notorious, and had appellee not been engaged in the illegal activity when the warrant was executed, then a plausible

case for an application of the *dicta* in *Maryland v. Garrison,* might have been presented. However, I cannot believe that *Maryland v. Garrison,* was intended to impose a requirement that a separate warrant be acquired for every locked door in a residence used to conduct an on-going criminal enterprise like a speakeasy or crack-house. Because, appellee was actively engaged in the substantial, continuous, open, and notorious speakeasy enterprise when the warrant was executed, it was entirely reasonable for the officers to conclude that his bedroom was not separate from, and inaccessible to, the speakeasy enterprise by virtue of the lock on the bedroom door.

The personal effects of visitors fortuitously present when a search warrant is executed constitutionally may be searched if the evidence sought could be secreted in those effects. *See Commonwealth v. Reese,* 520 Pa. 29, 549 A.2d 909 (1988). Visitors themselves may be searched when the totality of circumstances gives rise to a reasonable probability that the visitor may be willing and able to secret the evidence sought on their person. *See Commonwealth v. Graciani,* 381 Pa.Super. 626, 554 A.2d 560 (1989); *Commonwealth v. Heidelberg,* 369 Pa.Super. 398, 535 A.2d 611 (1987). The central holding in each of these cases was a rejection of a "separate privacy" claim which would have provided a simple expedient by which to evade the force of, and render ineffective, a reasonable search warrant.

In *Commonwealth v. Graciani, supra,* this author opined:

Finally, we note the following relevant analysis by Justice Larsen:

Furthermore, in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) Justice William Rehnquist, writing a dissent for the United States Supreme Court, made a telling point when he stated that *'an absolute bar to a searching persons not named in the warrant would often allow a person to frustrate the search simply by placing the contraband in his pocket.' Id.* at 102, 100 S.Ct. at 348. And so too, visitors to

the premises could frustrate the efforts of police by placing contraband among their unworn personal effects or by announcing ownership of various articles of clothing and containers in order to place those items beyond the scope of the warrant. *We cannot sanction any rule that through fraud and gamesmanship erects barriers to the effective and legitimate execution of search warrants.*

*Commonwealth v. Reese*, 520 Pa. 29, 34, 549 A.2d 909, 911 (1988). (Emphasis added).

This case presents an excellent example of just such fraud and gamesmanship. , Appellant complains that to uphold this search would make a mockery of our constitutions. To the contrary, it is appellant and his fellow drug dealers who attempt to make a mockery of our constitutions by taking the liberties embodied in the Fourth Amendment and Article I, section 8 of the Pennsylvania Constitution and attempting to twist them into a dark fortress from which to ply their deadly trade in societal poisons with impunity.

While we must ensure that legitimate constitutional rights do not become casualties in our society's war on drugs, no rule of constitutional construction requires that we ignore the realities of modern drug distribution systems in determining the reasonableness of the warrant issue in this case.

554 A.2d at 562.

So too, here, appellee sought to use a lock on a bedroom door to defeat a lawful search warrant for the inventory and other evidence of the substantial, continuous, open, and notorious illegal speakeasy enterprise being conducted on the premises. Again, it is necessary to view the execution of the search in context, rather than as an academic abstraction. Viewed in such a light, the manifest reasonableness of the execution of the search warrant in this case is readily apparent.

The warrant in this case authorized the search of the *entire* residence. Far from disclosing overbreadth in the

scope of the warrant, the facts which came to light during the execution of the warrant *reinforced* the reasonableness of the execution of the warrant including the search of appellee's bedroom. The suspicions (based upon probable cause) that a speakeasy enterprise was being conducted at the residence were amply confirmed immediately upon entry in execution of the warrant. Appellee was actually engaged in those activities, identified himself as a tenant, and indicated which room was his. I consider the search of appellee's bedroom entirely reasonable under these circumstances, notwithstanding the lock on the bedroom door. Succinctly, there was every reason to believe that appellee's locked bedroom might contain further evidence of the illegal activities toward which the search warrant was directed, as opposed to merely containing the private property of an innocent and uninvolved third party not intended to be affected by the warrant.

Prior case law in this Commonwealth supports the reasonableness of the warrant and its execution in this case. *See e.g. Commonwealth v. Davis*, 331 Pa.Super. 285, 292–93, 480 A.2d 1035, 1040–42 (1984); *Commonwealth v. Chamberlain*, 277 Pa.Super. 503, 511, 419 A.2d 1261, 1266 (1980); *Commonwealth v. Copertino*, 209 Pa.Super. 63, 67, 224 A.2d 228, 230 (1966). Likewise, cases from other jurisdictions following *Maryland v. Garrison, supra,* are supportive. *See e.g. United States v. Ofshe*, 817 F.2d 1508, 1514 (11th Cir.1987); *State v. Burns*, 163 Ariz. 44, 785 P.2d 1232, 1233–34 (App.1989); *People v. Foster*, 174 Mich.App. 505, 436 N.W.2d 397, 397–98 (1988); *State v. Hendricks*, 145 N.J.Super. 27, 366 A.2d 999, 1000–02 (1976).

Hence, I dissent, and would reverse the suppression order.