COMMONWEALTH of Pennsylvania

v.

Daniel K. WALTSON, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 7, 1997.

Filed Dec. 1, 1997.

William P. Wismer, Media, for appellant.

Stuart B. Suss, Asst. Dist. Atty., West Chester, for Com., appellee.

Before CAVANAUGH, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from a January 15, 1997 judgment of sentence for possession of a controlled substance,[1] possession with intent to deliver,[2] and manufacture with intent to deliver.[3] Appellant, Daniel Waltson, presents the following issue for our review:

Did the trial court commit error and abuse of discretion in denying the Appellant's Motion for Suppression of Evidence, where the search warrant and affidavit fail to set out the credibility and veracity of the informer, and where the police searched, and seized evidence from, the entire residence as described in the warrant, while the affi-

---

1. 35 P.S. § 780–113(a)(16).

2. 35 P.S. § 780–113(a)(32).

davit establishes probable cause to search the basement only?

Appellant's Brief at 4.

Both parties stipulated to the following facts:

On January 9, 1996 State Police responded to a domestic dispute at Mosquito Lane, London Grove, Pennsylvania.... They were met by a woman who they did not know, and who had never in the past given them any information regarding drugs or drug trafficking, who stated that she lived at 159 Mosquito Lane, and her boyfriend [appellant] was growing marijuana in the basement of the house. Based solely on that information, a search warrant was issued.

The search warrant lists [with adequate specificity the items to be seized.] The search warrant lists, as premises to be searched, "159 Mosquito Lane.... Residence is located on the west side of Mosquito Lane from common driveway. Described as a one story ranch cream stucco residence."

The State Troopers searched the entire house for drugs. In the basement of the house, the Troopers found one room in which ten marijuana plants were growing. The troopers found [marijuana and marijuana paraphernalia in other places in the house besides the basement....]

On November 22, 1996, appellant was convicted on all three charges in the Chester County Court of Common Pleas after a non-jury trial. Appellant was sentenced to 6 (six) to 23 (twenty-three) months in prison. This timely appeal followed.

Appellant first claims that the description in the warrant was over broad in that it authorized a search of the entire household when there was only probable cause to search the basement.

When reviewing the ruling of a suppression court, we must determine whether the record supports the factual findings. When a defendant appeals, we must consider only the evidence of the prosecution and so much

---

3. 35 P.S. § 780–113(a)(30).

of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. We are bound by the facts as found and may reverse the suppression court only if the legal conclusions drawn from those facts are in error. *Commonwealth v. Lewis,* 535 Pa. 501, 504, 636 A.2d 619, 621 (1994). As all facts were stipulated, our review is limited to the legal conclusion drawn from the stipulated facts.

The United States Constitution and the Pennsylvania Constitution both require that a warrant be based on probable cause and specify with particularity the place to be searched. U.S. Const. Amend. IV.; Pa. Const. Art. 1 § 8. *See generally Commonwealth v. Grossman,* 521 Pa. 290, 555 A.2d 896 (1989). Neither appellant nor the Commonwealth cite a Pennsylvania case addressing the propriety of a warrant that authorizes a search of an entire household based upon the probability of illicit activity in one portion of the household. Our research has also failed to yield such a case. We have, however, discovered cases from other jurisdictions that address this question.

The Maryland Court of Special Appeals addressed this issue in *Shoemaker v. State,* 52 Md.App. 463, 451 A.2d 127 (1982). Shoemaker was convicted of various offenses based in part on evidence obtained after a search of his home pursuant to a warrant. On appeal of his convictions Shoemaker argued, *inter alia,* that the warrant was a "general warrant condemned by the Founding Fathers." *Id.* 451 A.2d at 138. Specifically he argued "that all of the allegations dealing with the Shoemaker home pointed to the suspect documents being in a single desk in a single room and that the warrant gave the officers the unnecessarily broad prerogative to search the entire house." *Id.* The Court of Special Appeals dismissed Shoemaker's argument and noted that:

> The appropriate scope limitations of the Fourth Amendment ... prescribe that the warrant shall be one "particularly describing the place to be searched." This provision, however, has always been recognized as one which seeks to condemn the roving commission of the "general warrant" or "writ of assistance" to search houses and other places indiscriminately in the unfettered discretion of the search officer. Its salutary purpose is to narrow the locus of the search to a particular, ascertainable well-described house....
>
> What we have in this case is not what the Founding Fathers condemned but what the Founding Fathers were hoping to achieve.

*Id.* 451 A.2d at 138–139. *See also Tucker v. State,* 244 Md. 488, 224 A.2d 111 (1966).

At least four other states have addressed this issue and upheld the validity of the warrants in question. *See State v. Weide,* 812 S.W.2d 866 (Mo.Ct.App.1991) (rejecting argument that warrant must be limited to rooms in house where affidavit indicated contraband had been seen); *State v. Eggler,* 372 N.W.2d 12 (Minn.Ct.App.1985) (same); *Madrid v. State,* 595 S.W.2d 106 (Tex.Crim.App. 1979) (upholding the validity of the warrant to search an entire house even though the confidential informant only observed heroin in two specific places in the apartment; citing *Riojas v. State,* 530 S.W.2d 298 (Tex. Crim.App.1975) (upholding warrant to search entire residence based on information that defendant kept contraband in a shoebox in his bedroom closet)); *State v. Helmka,* 86 Wash.2d 91, 542 P.2d 115 (1975) (rejecting argument that warrant to search entire household based on observation of marijuana plants in one room through a street window was over broad).

The connecting thread in the above cases is the desire to limit the scope of the search to a structure controlled by the person or persons against whom the state has probable cause. Put another way, the courts want to protect individuals against whom the state does not have probable cause. That idea can be found in Pennsylvania cases dealing with searches of multi-unit households.

*Commonwealth v. Copertino,* 209 Pa.Super. 63, 224 A.2d 228 (1966), is one of the first cases to deal with this issue. In *Copertino* the police had a warrant to search a two-story dwelling. *Id.* 224 A.2d at 229. The warrant listed four individuals as "owner, occupant of premises and/or person to be searched." *Id.* The building in question contained two apartments. Silvio Copertino, ap-

pellee therein, lived in the upstairs apartment and was not one of the four individuals listed. The police searched the building and found evidence of an illegal lottery operation. The trial court suppressed the evidence and the Commonwealth appealed. We held that "[n]ormally, separate living units of a multiple tenant building must be treated as if they were separate dwelling houses and probable cause must be shown to search each one." *Id.* 224 A.2d at 230. In affirming the suppression we distinguished a case cited by the Commonwealth, *Commonwealth v. Fiorini,* 202 Pa.Super. 88, 195 A.2d 119 (1963). In *Fiorini,* we upheld a warrant that listed as the place to be searched " '[a] first floor pool room and a second floor apartment *occupied* by Joseph V. Fiorini ... ' and then listed the street and number." *Copertino,* 224 A.2d at 230 (emphasis added). The *Fiorini* court held the description was sufficient because it limited "the search to those parts which were occupied [by Fiorini]." *Id.* (citing *Fiorini*). In *Copertino,* we noted that the warrant "was limited only by the street and number, which turned out to be a two-story apartment building." *Id.*

Since we decided *Copertino,* this Court has repeatedly focused on ownership or actual occupancy in accessing the validity of warrants in multi-unit dwellings. *See e.g. In re Wilks,* 418 Pa.Super. 73, 613 A.2d 577 (1992) (citing cases). We do not discuss *which room* within a unit the probable cause points to but *which unit.* Similar to the reasoning of the other jurisdictions in the single unit cases listed above, the goal is protecting the privacy of people against whom the state does not have any probable cause. In *Commonwealth v. Wilson,* 395 Pa.Super. 523, 577 A.2d 913 (1990) this Court grappled with one of the exceptions to the separate probable cause rule of *Copertino.* We noted in *Copertino* that separate probable cause is not needed if there is cause to believe the premises covered by the warrant are being used as a single unit. *Copertino,* 224 A.2d at 230. In such a situation we essentially ignore the actual nature of the building and examine the warrant as if the building were occupied by a single tenant. *Wilson, supra.*

In *Wilson* the police had information that Willy Thompson was illegally selling alcoholic beverages in his basement. *Id.* 577 A.2d at 914. The police then obtained a warrant to search the entire house. Unbeknownst to the police at the time the warrant was issued, several of the upstairs rooms were rented by various tenants. Nevertheless this Court found the warrant valid. We examined the warrant's propriety as if the household was a single unit. During that analysis, we did not question the fact that the warrant covered the entire household, even though the probable cause for the warrant was the activity in the basement.[4]

Additionally, in *Commonwealth v. Andujar,* 264 Pa.Super. 326, 399 A.2d 1074 (1979), we again upheld a warrant and subsequent search of a multi-unit household when there was no evidence that the building in question was a multi-unit dwelling. In *Andujar,* "the affidavit in support of the warrant state[d] that *the informant advised police he had seen suspected drugs in a 'rear' bedroom.*" *Id.* 399 A.2d at 1076 (emphasis added). As in *Wilson,* we did not question the fact that the probable cause underlying the warrant only pointed to one room in the household.

■ Both *Wilson* and *Andujar* point this court towards the rule embraced by several other states. As we find the reasoning of our sister state's courts persuasive and consistent with our own notions of the appropriate scope of warrants, we choose to follow their lead. We hold that when there is probable cause to believe criminal activity is afoot in one room in a single unit household, a warrant to search the entire unit is not over broad.

■ Here, there was probable cause to believe that appellant was growing marijuana in the basement of his house. *See infra.* In such a situation, a warrant to search his entire house was not over broad. Accordingly, appellant's first argument fails.

Appellant also argues "that the information provided by Kimberly Nance fails to provide probable cause for the search of the

---

4. We ultimately held the search of Wilson's room invalid because prior to searching the room the police learned of the rental nature of the room. *Wilson,* 577 A.2d at 915.

**522**

Appellant's residence, as her reliability is not established on the face of the warrant." Appellant's Brief at 11.

■ Once a warrant has been issued it is our duty to decide whether the magistrate had a substantial basis for concluding that probable cause existed for issuance of a search warrant. *Commonwealth v. Eicher*, 413 Pa.Super. 235, 605 A.2d 337 (1992). When determining whether probable cause exists, we use the totality of circumstances test. *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985) (citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In making this determination we note that,

> [t]he information offered to demonstrate probable cause must be viewed in a common sense, nontechnical, ungrudging and positive manner. It must also be remembered that the probable cause is based on a finding of the probability, not a prima facie showing of criminal activity, and that deference is to be accorded a magistrate's finding of probable cause.

*Commonwealth v. Baker*, 532 Pa. 121, 126, 615 A.2d 23, 25 (1992).

■ In assessing an informant's reliability we note that when the informant is not a "paid unknown tipster but instead an identified eyewitness to a crime who voluntarily reports [her] observations to the police, the trustworthiness of such a person may be presumed." *Commonwealth v. Weidenmoyer*, 518 Pa. 2, 9, 539 A.2d 1291, 1295 (1988). Furthermore, the willingness of an eyewitness to reveal incriminatory information enhances her reliability. *Commonwealth v. Yacoubian*, 339 Pa.Super. 413, 489 A.2d 228 (1985).

■ Here, Nance revealed her name and allowed it to be used on the affidavit in support of the warrant. Nance implicated herself in criminal activity when she admitted that she had lived in a house that was

home to a marijuana growing operation.[5] Keeping in mind the deference we give to the issuing magistrate when reviewing the propriety of search warrants, we find that the issuing magistrate did not err in finding there was a probability of criminal activity and probable cause to issue the search warrant. *Baker, supra; Weidenmoyer, supra; Yacoubian, supra.*

Accordingly, we affirm the judgment of sentence.

Judgment affirmed.

---

5. Appellant argues that "a fair reading of the affidavit in the instant case shows that the trial court misperceives the purported inculpatory statement of Nance," and that Nance did not really implicate herself in criminal activity. Appellant's Brief at 13. This argument is without merit in light of the deference given to the issuing magistrate. As our Supreme Court stated in *Commonwealth v. Moss*, 518 Pa. 337, 543 A.2d 514 (1988), "[t]hat other inferences *could* be drawn *does not* demonstrate that the inference that *was* drawn by the police and the magistrate was unreasonable." *Id.* 518 Pa at 344, 543 A.2d at 518 (emphasis in original).