J-A27043-14

2015 PA Super 63

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
RONALD LEE DOUGALEWICZ, JR., :
:
Appellant : No. 247 WDA 2014

Appeal from the Judgment of Sentence entered on September 6, 2013
in the Court of Common Pleas of Lawrence County,
Criminal Division, No. CP-37-CR-0000514-2009

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
RONALD LEE DOUGALEWICZ, JR., :
:
Appellant : No. 248 WDA 2014

Appeal from the Judgment of Sentence entered on September 6, 2013
in the Court of Common Pleas of Lawrence County,
Criminal Division, No. CP-37-CR-0001129-2009

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.: **FILED MARCH 30, 2015**

Ronald Lee Dougalewicz, Jr. ("Dougalewicz"), appeals from the

judgment of sentence imposed following his convictions of one count each of

aggravated indecent assault of a person less than 16 years of age, indecent

assault of a person less than 16 years of age, and sexual abuse of children—

possession of child pornography, and two counts of corruption of minors.[1]

We affirm.

In 2008, Dougalewicz became the head coach for a summer league softball team. At that time, the 13-year-old victim played softball for the summer league team. Dougalewicz took an interest in the victim, recognizing that she was an excellent player. As the trial court explained in its Opinion, Dougalewicz spent time with the victim off of the softball field, which included

> shopping at Dunham's Sporting Goods, going to get ice cream, trips to the mall, golfing, the victim spending time at [Dougalewicz's] residence and an excursion to a USA Softball game in Akron, Ohio. Initially, the trip to the USA Softball game was to include several other members of the team; however, the others decided not to attend the game, so [Dougalewicz] and the victim traveled by themselves. The victim testified that on the way home from the USA Softball game, [Dougalewicz] touched her upper thigh and played with her hair.

> [Dougalewicz] and the victim began texting shortly after they met in 2008[,] and the texting continued into 2009. It must be noted that [Dougalewicz] was no longer [the victim's] softball coach, but was acting as the strength and conditioning coach at Union Area High School during that time. The victim's mother became concerned about the amount of time the victim was spending with [Dougalewicz] and how often they were exchanging text messages. As a result, [the victim's mother] instructed the victim to limit the amount of time she spent with [Dougalewicz]. On March 13, 2009, the victim was driven to Dunham's Sporting Goods to purchase softball cleats by her friend, N.H. Afterwards, the victim asked N.H. to drive her to a house in the North Hill area of New Castle and later revealed that it was [Dougalewicz's] residence. N.H. drove the victim to

---

[1] *See* 18 Pa.C.S.A. §§ 3125(a)(8), 3126(a)(8), 6312(d)(1), 6301(a)(1). Dougalewicz was convicted under a prior version of Crimes Code section 6312(d).

[Dougalewicz's] residence at approximately 6 p.m. or 7 p.m. The victim then ate dinner with [Dougalewicz] and his wife …. After dinner, the victim, [Dougalewicz, Dougalewicz's wife,] and two female friends of Dougalewicz's wife] entered [Dougalewicz's] hot tub for 15 to 20 minutes.  Everyone, except the victim, was drinking alcohol while they were in the hot tub. The victim then got out of the hot tub and changed her clothes. At that time, [Dougalewicz] told his wife that he was taking the victim home ….

… [Dougalewicz] did not drive the victim to her home, but stopped on a driveway located on Matthews Road in Union Township, New Castle, Lawrence County, Pennsylvania. [Dougalewicz] told the victim that he was going to kiss her now, which he proceeded to do.  He then unbuttoned [the victim's] jeans and penetrated her vagina with his finger using his left hand.  The incident lasted less than five minutes.  [Dougalewicz] began driving back to his residence with the victim in the vehicle when he was stopped by Nashannock Township [P]olice [O]fficer Alfred DeCarbo ["Officer DeCarbo"].  [Dougalewicz] told Officer DeCarbo that the victim was his niece….  Eventually, [Dougalewicz] and the victim returned to [Dougalewicz's] residence.  At that time, [Dougalewicz's wife] became angry because [Dougalewicz] returned with the victim….

Trial Court Opinion, 3/31/14, at 2-4.  The victim spent that night sleeping on a couch at Dougalewicz's residence.  Dougalewicz texted the victim asking her if she was alright.  The next morning, Dougalewicz asked the victim if they were going to finish what they had started.

The next day, Dougalewicz texted the victim and arranged to meet her at Harbor Bar.  Dougalewicz, driving his silver Hummer, picked up the victim.  After driving around, and purchasing food, Dougalewicz parked in a car lot in West Pittsburg in Lawrence County.  Dougalewicz  and the victim moved to the back seat, where Dougalewicz again penetrated the victim's

vagina with his finger. After about 15 to 20 minutes, Dougalewicz drove the victim to a mobile home park near her house, and dropped her off.

After that incident, Dougalewicz and the victim kept in constant contact, and exchanged text messages. The victim sent Dougalewicz approximately 15 pictures, which included pictures of her vagina. Dougalewicz sent a shirtless picture of himself to the victim. The victim told several friends about the incidents with Dougalewicz. Eventually, rumors about the victim and Dougalewicz began circulating at Union Area High School. When questioned, the victim repeatedly denied having a sexual relationship with Dougalewicz. At one point, the victim fabricated a story about having a sexual relationship with an unnamed black male. Eventually, the victim admitted having a sexual relationship with Dougalewicz to the Children's Advocacy Center, and then to Pennsylvania State Trooper Harry Gustafson.

During the police investigation, on March 24, 2009, Union Township Police Officer Michael T. Mrozek ("Officer Mrozek") filed, with the local Pennsylvania magisterial district judge ("MDJ"), an Application for Search Warrant and Authorization ("Application") to search and seize

> [a]ny and all text messages, picture mail and phone calls to and from Verizon phone number 724-[redacted] ["the Verizon phone"], and the same for Sprint PCS Cell phone number 724-[redacted] ["the Sprint phone"] in regards to alleged sexual misconduct with a 14[-]year[-]old female by Dougalewicz.

J-A27043-14

Application, 3/24/09, at 1. The Application described the items to be searched as "[a]ll phone records" belonging to the Verizon phone and the Sprint phone. *Id.* Officer Mrozek's Affidavit of Probable Cause ("Affidavit") averred, in relevant part, as follows:

> I[,] Officer Mrozek[,] am in the process of investigating alleged sexual misconduct committed against a 14[-]year old female by Dougalewicz. This officer has statements from two eyewitnesses to the alleged misconduct that are detailed and graphic. The statements suggest sexual activity between Dougalewicz and the 14[-]year old female since June of 2008. The witnesses related to this officer that many text messages exchanged between Dougalewicz and the 14[-]year[-]old female were of a sexual nature. The witnesses also related to this officer that the 14 year old had sent nude pictures of herself to Dougalewicz at his request. Based on the information contained in the written statements by the witnesses and the verbal conversations with this officer, I am requesting a Search Warrant to obtain all text messages and picture mail in regards to the above mentioned phone numbers.

Affidavit, 3/26/09, at 1. That same date, the MDJ approved the Application and issued the Search Warrant.

The Search Warrant was served upon each carrier in Kansas.[2] Sprint complied with the Search Warrant. Verizon requested that a new warrant, naming the carrier as "Cellco Partnership d/b/a/ Verizon Wireless," be issued. Officer Mrozek filed a second Application for Search Warrant with

---

[2] Sprint maintained a principal office in Kansas. Verizon stored electronic communications in Kansas.

- 5 -

the change requested by Verizon, which the MDJ granted. Verizon then complied with the new search warrant.[3]

Dougalewicz subsequently was charged with, *inter alia*, the above-described charges at two docket numbers. Dougalewicz filed an omnibus pre-trial suppression Motion ("Suppression Motion") on July 10, 2009. The parties agreed to rely upon the preliminary hearing testimony to resolve the Suppression Motion. On June 23, 2010, the suppression court denied Dougalewicz's Omnibus Pretrial Motion.

On June 7, 2012, Dougalewicz filed a supplemental suppression Motion ("Supplemental Suppression Motion"). The suppression court scheduled a hearing on the Supplemental Suppression Motion. It later cancelled the hearing and directed the parties to file legal briefs. On February 13, 2013, the suppression court denied the Supplemental Suppression Motion.

After a consolidated bench trial on the charges at both docket numbers, the trial court convicted Dougalewicz of the above-described charges. At docket number C.R. 514 of 2009, the trial court sentenced Dougalewicz to a prison term of three to ten years for his conviction of aggravated indecent assault, and to no further sentence for his conviction of indecent assault.[4] At docket number C.R. 1129 of 2009, the trial court

---

[3] The Sprint Search Warrant and the Verizon Search Warrant are hereinafter collectively referred to as "the Search Warrants."

[4] The trial court granted Dougalewicz's Motion for Judgment of Acquittal as to a corruption of minors charge.

imposed a consecutive sentence of nine months to seven years in prison for Dougalewicz's conviction of sexual abuse of a child—possession of child pornography. For his conviction of corruption of minors, the trial court sentenced Dougalewicz to a consecutive prison term of three months to one year. Dougalewicz filed post-sentence Motions, which the trial court denied. Thereafter, Dougalewicz filed a Notice of Appeal, followed by a timely Concise Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b).

On appeal, Dougalewicz presents the following claims for our review:

I.  When stored electronic communications were obtained unlawfully under both Federal and State law, did the [suppression c]ourt commit error when it ruled that[,] even assuming that the communications had not been lawfully seized, no suppression should be granted unless specifically authorized by statute?

II.  Does a Pennsylvania [MDJ] have authority or jurisdiction to issue a search warrant ordering the seizure of evidence located in the state of Kansas; and did the [suppression court] commit error in not suppressing evidence seized in the state of Kansas pursuant to a search warrant issued by a Pennsylvania [MDJ]?

III.  Did the [suppression c]ourt commit error in refusing to suppress, as overly broad and insufficiently specific, a search warrant that ordered the seizure of all phone records belonging to a person's phone number, without limit as to time or content?

IV.  Did the [suppression c]ourt commit error in failing to suppress the information seized from [] Dougalewicz's cell phone carrier pursuant to a search warrant that was not supported by an adequate Affidavit of Probable Cause?

Brief for Appellant at 5.

In reviewing the trial court's suppression ruling, we are guided by the following principles:

> The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the rulings of a suppression court, [the appellate court] considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, [the court is] bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Johnson*, 33 A.3d 122, 125-26 (Pa. Super. 2011) (internal quotation marks, citations and footnote omitted).

Dougalewicz first claims that the suppression court erred when it refused to suppress the evidence seized as a result of the Search Warrants. Brief for Appellant at 12. Dougalewicz argues that, under the relevant version of the United States Stored Communications Act ("SCA"), 18 U.S.C.A. §§ 2701-2712, a Pennsylvania MDJ is not authorized to issue a search warrant for stored electronic communications located outside of the Commonwealth. Brief for Appellant at 13-14. Citing 18 U.S.C.A. § 2703(d), Dougalewicz contends that only a "court of competent jurisdiction" could issue a search warrant for stored electronic communications. Brief for Appellant at 14. Dougalewicz points out that in 2009, a "court of competent jurisdiction" was defined by statute as "a court of general criminal jurisdiction of a State **authorized by the law of that State to enter**

**orders authorizing the use of a pen register or trap or trace device.**"

Brief for Appellant at 14 (emphasis added) (quoting 18 U.S.C.A. § 3127(b)

(2009)). Dougalewicz asserts that the evidence seized pursuant to the

Search Warrants must be suppressed because at that time, the Pennsylvania

MDJ was not authorized, under the SCA, to issue the Search Warrants. *Id.*

at 17.

Dougalewicz further argues that under Pennsylvania's Stored Wire and

Electronic Communications and Transactional Records Access Act ("the

Pennsylvania Act"), 18 Pa.C.S.A. §§ 5741 *et seq.*, any search warrant for the

contents of stored electronic communications must be issued by a "Court."

Brief for Appellant at 15 (citing 18 P.S. § 5743(d)). According to

Dougalewicz, the Pennsylvania Act defines a "Court" as "the Superior Court"

except, under subchapter C, the term refers to "the Court of Common

Pleas." *Id.* at 15 (citation omitted). Dougalewicz asserts that because the

MDJ had no authority to issue the Search Warrants, the suppression court

erred in not suppressing the evidence seized as a result of the Search

Warrants. *Id.* at 15, 17.

The primary objective of the Fourth Amendment to the United States

Constitution is the protection of privacy. ***See Warden v. Hayden***, 387 U.S.

294, 304 (1967) (stating that the "principal object of the Fourth Amendment

is the protection of privacy"). However, "embodied in Article I, Section 8 [of

the Pennsylvania Constitution] is a strong notion of privacy, which is greater

than that of the Fourth Amendment." ***Commonwealth v. Waltson***, 724 A.2d 289, 292 (Pa. 1998).

In general, the Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, do not permit police to search for or seize property absent a lawfully obtained search warrant. ***See Commonwealth v. Anderson***, 40 A.3d 1245, 1249 (Pa. Super. 2012). "[F]or a search to be reasonable under the Fourth Amendment or Article I, Section 8, police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search." ***Commonwealth v. Gary***, 91 A.3d 102, 107 (Pa. 2014).

While the Fourth Amendment does not contain an express mandate that evidence seized as a result of an illegal search must be suppressed, "[t]he [exclusionary] rule [] operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." ***U.S. v. Leon***, 468 U.S. 897, 906 (1974) (citation and internal quotation marks omitted). The remedy of suppression is a creature of the statute, and, "[t]he availability of the suppression remedy for … statutory, as opposed to constitutional, violations … turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights." ***U.S. v. Donovan***, 42

U.S. 413, 432 n.22 (1977). It is in this context that we review the statutory language at issue.[5]

The Electronic Communications Privacy Act ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848, amended the federal Wiretap Act,[6] to "address[] the interception of … electronic communications." S. Rep. No. 99-541, at 3 (1986). Title II of the ECPA created the SCA, 18 U.S.C.A. §§ 2701-2018, which was designed to "address[] access to stored wire and electronic communications and transactional records." ***Id.***

At the time the Search Warrants were issued, the SCA provided, in relevant part, as follows:

> (a) Contents of wire or electronic communications in electronic storage. A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation **or equivalent State warrant**….
>
> (b) Contents of wire or electronic communications in a remote computing service.
>
> > (1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection—

---

[5] As the proper interpretation of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Daniels***, 963 A.2d 409, 417 (Pa. 2009).

[6] 18 U.S.C.A. §§ 2510 *et seq*.

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation **or equivalent State warrant**[.]

…

(c) Records concerning electronic communication service or remote computing service.

(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—

(A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation **or equivalent State warrant**[.]

(d) Requirements for court order. **A court order for disclosure under subsection … (c) may be issued by any court that is a court of competent jurisdiction** and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. **In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State.** …

18 U.S.C.A. § 2703(a)-(d) (2009) (emphasis added).

At the time the Search Warrants were issued, the term "court of competent jurisdiction" was defined in the SCA as having "the meaning assigned by [18 U.S.C.A. §] 3127, and includes any Federal court within that

definition, without geographic limitation[.]"  18 U.S.C.A. § 2711.  Section

3127 defined a "court of competent jurisdiction," in relevant part, as "**a

court of general criminal jurisdiction of a State authorized by the law

of that State to enter orders authorizing the use of a pen register or

a trap and trace device**[.]"  18 U.S.C.A. § 3127(2)(B) (emphasis added).

In Pennsylvania, at the relevant time, only a judge of the Pennsylvania

Superior Court could authorize the use of a pen register or trap and trace

device.  ***See*** 18 Pa.C.S.A. § 2702 (2009) (defining the term "judge" as,

"[w]hen referring to a judge authorized to receive applications for, and to

enter, orders authorizing interceptions of wire, electronic or oral

communications pursuant to Subchapter B (relating to wire, electronic or

oral communication), any judge of the Superior Court.").  Therefore, to

comply with federal law in 2009, a search warrant for stored electronic

communications must be issued by a judge of the Pennsylvania Superior

Court.

Similarly, section 5743(d) of the Pennsylvania Act provided that a

search warrant for the contents of stored electronic communications must be

issued by a "Court."  18 Pa.C.S.A. § 5743(d) (2009).  The Pennsylvania Act

defined a "Court" as "[t]he Superior Court.  For the purposes of Subchapter

C only, the term shall mean the court of common pleas."  18 Pa.C.S.A.

§ 5702 (2009).  Accordingly, under the Pennsylvania Act, the MDJ in the

instant case lacked the authority to issue the Search Warrants. However, our analysis does not end at this point.

In its February 14, 2013 Opinion, the suppression court concluded that the SCA "does not provide for a suppression remedy" even if Dougalewicz is correct. Suppression Court Opinion, 2/14/13, at 5. In so holding, the suppression court relied upon 18 U.S.C.A. § 2708, which states that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C.A. § 2708; *see also* Suppression Court Opinion, 2/14/13, at 5. We agree.

Contrary to Dougalewicz's arguments, the SCA did not provide for the exclusion from evidence of electronic communications that were unlawfully accessed. Rather, the SCA provided civil damages and criminal punishment as remedies for its violation. *See* 18 U.S.C.A. § 2707(b) (2009) (listing "appropriate relief" as "equitable or declaratory relief," "damages," and "reasonable attorney's fee[s] and other litigation costs reasonably incurred"); *id.* § 2708 (providing that the sanctions described in that chapter are the only judicial remedies and sanctions for nonconstitutional violations of the statute). We decline to apply the exclusionary rule for a statutory violation, when Congress has not provided for such remedy.

For the same reason, we are unable to afford relief to Dougalewicz under the Pennsylvania Act. At the relevant time, Section 5748 of the

Pennsylvania Act provided that "[t]he remedies and sanctions described in this subchapter are the only judicial remedies and sanctions for nonconstitutional violations of this subchapter." 18 Pa.C.S.A. § 5748 (2009). Regardless of whether an MDJ had the authority to issue a warrant for the search and seizure of electronic communications, the Pennsylvania legislature excluded suppression as a remedy for non-constitutional violations of the Pennsylvania Act.[7]

Because neither the relevant federal nor state statutes provided for the exclusion of evidence upon a non-constitutional violation of their respective provisions, the suppression court properly denied Dougalewicz's Supplemental Suppression Motion. We therefore cannot grant Dougalewicz the relief requested.

In his second claim, Dougalewicz argues that a Pennsylvania MDJ has no jurisdiction to seize evidence located in Kansas, and therefore, the evidence should have been suppressed. Brief for Appellant at 21. Dougalewicz contends that a Pennsylvania court's jurisdiction is conferred by Judicial Code sections 5503 and 5504, which grant jurisdiction over chattels and documents (respectively), located only within Pennsylvania. Brief for Appellant at 21. According to Dougalewicz, "[t]here is no legal authority granted to a Court in the Commonwealth of Pennsylvania to order the

---

[7] We observe that Dougalewicz's claim does not implicate his constitutional rights. **See Gary**, 91 A.3d at 107 (providing that for a search to be reasonable under the federal or state constitutions, the warrant must be issued by an independent judicial officer).

production of a witness or evidence located in another state." ***Id.*** Further, relying upon Pa.R.Crim.P. 200, Dougalewicz asserts that a search warrant could be issued only by the issuing authority within the judicial district where the subject of the warrant is located. Brief for Appellant at 21. In support, Dougalewicz directs our attention to cases *not* involving the search of electronic or stored electronic communications. ***Id.*** at 24.

As set forth *supra*, the search of electronic and stored communications is expressly governed by the above-referenced federal and state statutes. Those statutes do not afford suppression as a remedy for nonconstitutional violations of their respective provisions. For the same reasons as those cited above, we cannot grant Dougalewicz relief on this claim.

In his third claim of error, Dougalewicz argues that the suppression court improperly failed to suppress the evidence seized pursuant to the Search Warrants, as they were overbroad and insufficiently specific. Brief for Appellant at 25. Dougalewicz contends that the Search Warrants failed to limit the time or content of the phone records to be searched and seized. ***Id.*** Therefore, Dougalewicz asserts, the intrusion into his privacy was "as broad and as far reaching as possible." ***Id.***

As this Court has explained,

It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched…. The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity

authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general "rummaging" banned by the [F]ourth [A]mendment. A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation…. An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

…

The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be …." The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible …. Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible.

*Commonwealth v. Orie*, 88 A.3d 983, 1002-03 (Pa. Super. 2014) (quoting

*Commonwealth v. Rivera*, 816 A.2d 282, 290-91 (Pa. Super. 2003)

(citations omitted)). Because the particularity requirement in Article I,

Section 8 is more stringent than in the Fourth Amendment, if the warrant is

satisfactory under the Pennsylvania Constitution it will also be satisfactory

under the federal Constitution. *Orie*, 88 A.3d at 1003.

"[T]he Pennsylvania Supreme Court has instructed that search warrants should be read in a common sense fashion and should not be invalidated by hyper-technical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." *Id.* (internal quotation marks and citation omitted).

As the suppression court stated in its Opinion,

> [a]n inspection of the [A]ffidavit [of Probable Cause] reveals that, contrary to [Dougalewicz's] assertions, records are requested for the period of June 2008 to April 1, 2009, the date that the [A]ffidavit was signed. As a result, [the suppression c]ourt finds [Dougalewicz's] argument regarding the breadth of Officer Mrozek's request to be without merit.

Suppression Court Opinion, 6/23/10, at 9. This finding is supported in the record, and the suppression court's legal conclusion is sound. *See id.*

Our review further discloses no merit to Dougalewicz's claim that the Search Warrants were not limited as to content. Contrary to Dougalewicz's assertion, the Search Warrants sufficiently identified and limited the items to be searched and seized as text messages, phone calls and picture mail from and to the Verizon and Sprint phones, "in regards to alleged sexual misconduct with a fourteen year old female by Dougalewicz." Application, 3/24/09, at 1. Accordingly, we discern no error or abuse of discretion by the suppression court in denying Dougalewicz relief on this claim.

In his final claim of error, Dougalewicz argues that the Search Warrants presented to the carriers were not supported by probable cause. Brief for Appellant at 29. In particular, Dougalewicz asserts that Officer

Mrozek's Affidavit failed to name the persons providing information to the officer; the Affidavit did not identify the source of the information from which the informants obtained their information; the Affidavit failed to state to whom the identified telephone numbers belong or why a search of the records of those phone numbers would lead to evidence of a crime; and that the bulk of the Affidavit contained conclusions, and not supporting facts that would establish probable cause. *Id.* at 30.

In its Opinion, the suppression court addressed these claims as follows:

> The [A]ffidavits indicate that Officer Mrozek received detailed and graphic written statements from two eyewitnesses to the alleged misconduct. The [A]ffidavits also state that the eyewitnesses had verbal conversations with Officer Mrozek, suggesting that the officer knows the identity of the eyewitnesses. An issuing authority may presume that the identified eyewitnesses to the alleged crime are reliable. *Commonwealth v. Walston*, 703 A.2d 518, 522 (Pa. Super. 1997). The fact that the witnesses observed and gave detailed statements of the alleged misconduct all suggests that the eyewitnesses had a factual basis for their reports. As a result, the [A]ffidavits contained sufficient information concerning the knowledge and reliability of the eyewitnesses.

Suppression Court Opinion, 6/23/10, at 9-10. The suppression court's findings are supported in the record, and its legal conclusions are sound. Accordingly, we affirm on the basis of the suppression court's above-stated rationale with regard to this claim. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2015