J-S11007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                               :            PENNSYLVANIA
                                                :

                   v.                        :
                                                :
                                                :

ISMAEL DOMINGUEZ                  :
                                                :
                   Appellant              :       No. 195 WDA 2019

Appeal from the Judgment of Sentence Entered January 10, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000998-2017

BEFORE: NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:              **FILED: AUGUST 20, 2021**

Appellant Ismael Dominguez appeals from the judgment of sentence following a non-jury trial and convictions for homicide by vehicle while driving under the influence (DUI) (Count 2), homicide by vehicle (Count 3), involuntary manslaughter (Count 4), two counts of accidents involving death or personal injury while not properly licensed (Counts 5 and 6), two counts of DUI-general impairment (Counts 8 and 9), four counts of recklessly endangering another person (REAP) (Counts 10 through 13), reckless driving (Count 14), and other associated offenses.[1] Appellant raises the following claims: (1) the trial court's denial of his motion to suppress his medical records

---

[1] Respectively, 75 Pa.C.S. § 3735(a), 75 Pa.C.S. § 3732(a), 18 Pa.C.S. § 2504(a), 75 Pa.C.S. § 3742.1(a), 75 Pa.C.S. § 3802(a)(1), 18 Pa.C.S. § 2705, and 75 Pa.C.S. § 3736(a).

because the warrant was (a) overbroad and violated the specificity requirements of the Fourth Amendment of the U.S. Constitution and Article 1, Section 8 of the Pennsylvania Constitution, and (b) not supported by probable cause; (2) the discretionary aspects of his sentence; and (3) his convictions on the basis of double jeopardy. We affirm the convictions, vacate the judgment of sentence, and remand for resentencing.

Because the facts that led to Appellant's convictions are undisputed, we quote from the trial court's opinion stating the facts:

> During the early evening hours of August 14, 2016, at approximately 5:50 p.m., [Appellant] got behind the steering wheel of a silver Hyundai Accent despite his extreme intoxication and caused a five-car collision on Route 51 that killed his girlfriend and passenger, Maria Luevano.
>
> \* \* \*
>
> When officers arrived at the "chaotic" scene of the multi-car collision, they observed that [Appellant's] passenger, Maria Luevano, was positioned halfway underneath the front dashboard, "slumped over in a leaning position," and unconscious. Ms. Luevano was rushed to the hospital following the crash, but she ultimately died as a result of the injuries that she suffered in this accident.
>
> [Appellant] was conscious, but the "interior of the vehicle was completely pushed back into the front occupants," trapping both passengers inside of the car. Medics "were attempting to extricate both of them from the vehicle," but [Appellant's] feet were lodged underneath the dashboard. The rescue crew had to forcibly remove parts of the door to reach the occupants.
>
> Once [Appellant] was freed from the vehicle, he became "combative" and "uncooperative" with police and even tried to remove his restraints. According to responding Officer Shawn Bliss of the Pittsburgh Police Department, [Appellant] "did not ask about the well-being of the passenger," and "did not seem

concerned about his own well-being." This stood out in Officer Bliss' mind as unusual because, based on his experience, "the first thing from an occupant of a crash is concern for others' well-being."

＊　　＊　　＊

[Appellant] eventually was transported by ambulance to the hospital and received treatment for his serious injuries.

The investigation following this fatal multi-car collision revealed that Ms. Luevano had permitted [Appellant] to drive the silver 2015 Hyundai Accent that she had rented in her name from Enterprise on August 12, 2016, two (2) days before her death. [Appellant] was not listed as an authorized driver on the rental agreement, and he did not have a valid driver's license at the time of the fatal crash.

A cursory inspection of the rental vehicle showed that the speedometer was "frozen at 99 miles per hour," and the tachometer was frozen at 5,600 RPM. The data downloaded from the Event Data Recorder ("EDR") of the vehicle revealed that [Appellant] was traveling at a speed of 100 miles per hour one (1) second prior to impact and that the vehicle was actually accelerating in the five (5) seconds before the crash. The EDR also showed that, at the time of impact, Ms. Luevano was wearing her seatbelt, but [Appellant] was not wearing his.

The EDR showed that [Appellant] had never attempted to apply the brakes in the seconds preceding the crash, but rather had the gas pedal pressed to the floor. The EDR revealed that the engine RPM at the time of impact "was still between 5,500 and 5,300 RPMS, which [meant] that the vehicle was still being accelerated or the speed was being maintained at the time of impact, [and] that there was no braking involved, either." The information from the antilock brake system ("ABS") showed that, "from five seconds prior to impact all the way to impact," there was "no ABS activity, which indicates there was no braking."

It further was determined that the steering wheel remained in the same fixed position from five (5) seconds before the crash until the point of impact, which meant that, while [Appellant] did not jerk his steering wheel directly towards the median, he also did not attempt to swerve away from it to avoid impact. In sum, the

EDR showed that there was "no attempt to slow down," "no attempt to brake," and no attempt to steer away from the median before impact.

Results from the autopsy show that Ms. Luevano's death was caused by "multiple blunt impact injuries." Specifically she sustained "blunt impact injury to the head, neck, torso, and extremities." There were "multiple abrasions and contusions" on her face, torso, and extremities. Ms. Luevano also suffered a "hemorrhage of the scalp, hemorrhage in the chest," and rib fractures on the ride sight of her body. She had "a laceration on the left ventricle of the heart," as well as lung, liver, adrenal, bladder, and uterine lacerations. There were hemorrhages also detected in the center of her chest, pancreas, rectum, and bladder. Ms. Luevano had a whole blood alcohol level of 0.199% at the time that the autopsy was performed.

Evidence of [Appellant's] actual Blood Alcohol Content ("BAC") was never introduced by the Commonwealth during trial. The medical evidence only generally confirmed that there was alcohol detected in [Appellant's] blood. The medical record relied upon as evidence of [Appellant's] blood alcohol level stated only that at 6:40 p.m. that evening, his "ethanol" was "276" and his "alcohol" was "276 milligrams per dekaliter." Although these numbers were never translated into an actual BAC level, [Appellant] conceded through his attorney during closing arguments that he was seriously intoxicated at the time that he caused the fatal multi-vehicle collision.

Trial Ct. Op., 6/21/19, at 6-14 (citations omitted).[2]

Appellant proceeded to a non-jury trial and was convicted of the above crimes. After a pre-sentence investigation, on September 25, 2018, the trial court sentenced Appellant to an aggregate sentence of eight years and three months to sixteen-and-a-half years' incarceration.

---

[2] We summarize additional facts and procedural history below to the extent that they may be relevant to Appellant's issues.

Appellant timely filed a post-sentence motion and a court-ordered supplemental post-sentence motion. Appellant's Suppl. Post-Sentence Mot., 12/3/18, at 6-7. In addition to challenging the discretionary aspects of his sentence, Appellant also contended that convicting him of two counts of DUI for the same criminal act violated double jeopardy. *Id.* He also argued that the trial court failed to "put adequate reasons on the record for departing from the standard range of the Sentencing Guidelines." *Id.* at 9. After a hearing, the trial court granted in part and denied in part Appellant's post-sentence motions on January 10, 2019. Specifically, the trial court vacated the "no further penalty" for counts three and four and sentenced Appellant to "guilty but merged" with Count 2. Order, 1/10/19.

Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a responsive Rule 1925(a) opinion.[3] Appellant raises four issues on appeal:

> 1. Did the trial court err in failing to suppress [Appellant's] medical records because they were obtained pursuant to an overbroad, general warrant in violation of the particularity requirements of the U.S. and Pennsylvania Constitutions?

---

[3] The trial court's Rule 1925(a) opinion addressed other issues that Appellant does not raise in this appeal. However, he does not argue these issues in his appellate brief, and therefore, they are waived. *See Commonwealth v. Felder*, 247 A.3d 14, 20 (Pa. Super. 2021) (stating that "an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted and formatting altered)).

- 5 -

2. Did the trial court err in failing to suppress [Appellant's] medical records because they were obtained via a search warrant that was not supported by probable cause?

3. Did the trial court violate the sentencing code by imposing an above-aggravated range sentence without stating the guidelines or the reasons for departing from them, and by imposing an excessive sentence that failed to consider [Appellant's] character and rehabilitative needs?

4. Were [Appellant's] rights under the double jeopardy clause of the Fifth Amendment of the U.S. Constitution and Article 1, § 10 of the Pennsylvania Constitution . . . violated because he was charged and convicted of two identical DUI offenses, even though there was only one incident?

Appellant's Brief at 9.

## 1. Overbroad Search Warrant

Before summarizing Appellant's arguments in support of his first issue, we state the following as background.[4] During its investigation, two different assistant district attorneys separately requested Appellant's hospital records: one was via subpoena and the other was via search warrant. In pertinent part, on November 3, 2016, Assistant District Attorney Ken Harris issued a subpoena to UPMC Mercy Hospital for "all med records . . . for [Appellant] treated 08/14/2016." Ex. A. to Appellant's Am. Omnibus Pretrial Mot.,

---

[4] As we note below, the trial court's Rule 1925(a) opinion reasoned that this Court should affirm the constitutional validity of the search based in part on the "independent source doctrine." *See* Trial Ct. Op., 6/21/19, at 14-15. Appellant, however, did not raise an "independent source" argument on appeal. We find it necessary to briefly summarize these facts, however, to provide some context.

9/21/17. On November 10, 2016, the hospital responded, enclosing copies of responsive medical records that were sent to Attorney Harris. *Id.* Officer Wolfe never saw those medical records.[5] N.T. Am. Omnibus Pretrial Mot. Hr'g, 11/9/17, at 5.

Separately, Assistant District Attorney Chris Avetta instructed Officer Wolfe to obtain a search warrant for the medical records.[6] *Id.*; *see* N.T. Pretrial Mot. Hr'g, 12/6/17, at 19-20 (summarized below). On December 13, 2016, Officer Wolfe prepared an affidavit of probable cause. Aff. of Probable Cause, 12/13/16, attached as Ex. C to Am. Omnibus Pretrial Mot. The first paragraph summarized Officer Wolfe's background, education, and experience, which included ten years as a certified crash reconstructionist and over twenty-three years of experience as a police officer.[7] *Id.*

The second paragraph summarized the accident:

On August 14, 2016 approx 1753 hours, [Appellant] based on the investigation, was operating a 2015 Hyundai Accent . . . on Saw Mill Run Blvd. [Appellant] was driving at a speed of 100 MPH, this has been documented through Electronic Data Recorder (EDR) download and the "locked" position of the speedometer after the crash. [Appellant] crossed over the concrete divider, into the opposing traffic lanes and collided with a pickup truck and then collided head on with a Hyundai SUV. The roadway has a slight right curve at scene of this crash. Scene investigation did not

_____

[5] Attorney Harris did not speak about these events at any court hearing.

[6] Attorney Avetta never stated whether he was aware of the subpoena before asking Officer Wolfe to obtain a search warrant.

[7] Officer Wolfe was not part of the on-scene investigation. N.T. Pretrial Mot. Hr'g, 12/6/17, at 16.

reveal any brake marking or steering inputs by the operator. The roadway was wet from recent rain. As result of the crash, Maria LUEVANO suffered fatal injuries and was pronounced dead at Allegheny General Hospital . . . .

*Id.*

The next two paragraphs summarized Officer Wolfe's investigation, including interviewing the victim's minor daughter who stated that the victim was with Appellant at a bar. *Id.* The affidavit stated that on November 3, 2016, Officer Wolfe received the victim's toxicology test results, which revealed that the victim had "whole blood ethanol of .199%." *Id.*

The concluding paragraph of the affidavit of probable cause follows:

Based on my training and experience, impairment due to alcohol and/or drug use, would be a significant contributing factor in this crash investigation. An impaired driver would have slowed reactions and poor judgement which would contribute to this vehicle crossing the divider into oncoming traffic. When an individual involved in a crash is taken to the hospital for medical treatment, the hospital frequently draws blood and tests the blood for medical purposes during initial examination. Your Affiant, Investigator WOLFE, is requesting a warrant for the medical records of [Appellant] from his admission into UPMC Mercy Hospital on August 14, 2016, to determine if alcohol and/or drug impairment was a factor of the crash resulting in the death of Maria LUEVANO. Affiant believes there is probable cause to believe the medical records will contain evidence of blood draws and blood testing which would be material evidence.

*Id.*

Officer Wolfe also prepared the application for the search warrant, which in relevant part requested, "**All Medical Records**, to include laboratory reports, of [Appellant] from admission date of 08/14/2016 to UPMC Mercy Hospital as result of a vehicle crash." Appl. for Search Warrant, 12/13/16,

attached as Ex. C to Am. Omnibus Pretrial Mot. (emphasis added). The issuing authority approved the application on December 15, 2016. In response, the hospital produced a compact disc (CD), Officer Wolfe reviewed the CD, retrieved the laboratory reports, and provided the laboratory reports to the district attorney's office.[8]  N.T. Pretrial Mot. Hr'g, 12/6/17, at 13-14.

On September 21, 2017, Appellant filed an amended motion to suppress the medical records. Appellant asserted that the "warrant application lacks the requisite probable cause to justify the search," and the "request for 'all medical records to include laboratory reports . . .' is overbroad based on the information contained in the affidavit of probable cause."  Am. Omnibus Pretrial Mot. at ¶¶ 11-12 (ellipses in original).

At the suppression hearing, Officer Wolfe explained that in the warrant application, he requested "more than just the laboratory reports," because the medical records would be "important . . . to reconstruct the crash."  N.T. Pretrial Mot. Hr'g, 12/6/17, at 22. Specifically, the "injury pattern" would provide "information on how the crash occurred, who was driving, what their

---

[8] Officer Wolfe testified that he executed the warrant on December 14, 2016. N.T. Pretrial Mot. Hr'g, 12/6/17, at 13. The hospital sent records that established Appellant had an ethanol of "276" and alcohol "at 276 milligrams per dekaliter [sic]." N.T. Trial, 6/26-27/18, at 185. As the trial court noted in its opinion, "these numbers were never translated into an actual BAC level . . . ." Trial Ct. Op. at 14. Typically, blood alcohol count is measured in milligrams per deciliters of whole blood. *See Commonwealth v. Karns*, 50 A.3d 158, 163 (Pa. Super. 2012). Officer Wolfe never provided the actual CD to the district attorney's office. N.T. Pretrial Mot. Hr'g, 12/6/17, at 15.

sitting position was, whether or not they were wearing a seat belt." *Id.* Officer Wolfe acknowledged he did not "mention any of that" in the affidavit of probable cause. *Id.* At the conclusion of the suppression hearing, Appellant argued there was insufficient probable cause and the warrant was overbroad. *Id.* at 26-27. The trial court denied the motion to suppress on February 28, 2018. Order, 2/28/18.

We turn to Appellant's first issue on appeal, for which he raises two arguments. First, Appellant argues that the Commonwealth's seizure of all of his medical records from the crash date under a general warrant was unconstitutional. Appellant's Brief at 19-29. In Appellant's view, the affidavit of probable cause failed to aver "that evidence of criminal activity was likely to result" from a search of his "medical records unrelated to his toxicology report." *Id.* at 21. Appellant argues the Fourth Amendment bars this "open-ended fishing expedition." *Id.* (quoting Trial Ct. Op. at 4). In sum, Appellant claims the warrant requesting "all medical records" was too broad and authorized an unconstitutional "indiscriminate 'rummaging'" through his medical records, which is barred by the Fourth Amendment. *Id.*

Appellant's second argument is that the seizure was unconstitutional because the warrant failed to specify the items to be searched for under Article

1, Section 8 of the Pennsylvania Constitution.[9]  Appellant analogizes his case to the facts and holding of **Commonwealth v. Grossman**, 555 A.2d 896 (Pa. 1989), which held that "a warrant authorizing the seizure of **all** of an insurance agency owner's files" was unconstitutional because the "accompanying affidavit averred probable cause only for three of the more than 2,000 files in the [defendant's] possession." **Id.** at 23 (emphasis in original) (summarizing **Grossman**).  Appellant argues that the warrant at issue here is identical to the unconstitutional warrant in **Grossman** because the affidavit "offered nothing to suggest that probable cause existed to believe that [Appellant's] **other** medical records would contain evidence of criminal activity." **Id.** at 23-24 (emphasis in original).  Appellant similarly faults the trial court's rationale that his medical records "potentially contained information that would be relevant in determining whether alcohol and/or drugs" caused the accident because "[e]xisting caselaw offers no basis for a court to cure a defective search warrant on the basis that items for which no probable cause was even averred to exist may nevertheless 'potentially . . . be relevant' to determining" whether a crime occurred.  **Id.** at 24.

---

[9] "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."  Pa. Const. art. 1, § 8.

The Commonwealth counters that the search warrant specifically requested, as quoted above, "all medical records" of Appellant from the date of his admission to the hospital as a result of the vehicle crash. Commonwealth's Brief at 19-20.  In the Commonwealth's view, the trial court correctly held that the warrant was sufficiently limited to help the police determine the cause of the crash.  *Id.* at 20.  The Commonwealth asserts that "the warrant was written broadly enough to include records that had evidentiary value."  *Id.* (citing **Commonwealth v. Sherwood**, 982 A.2d 483 (Pa. 2009), and **Commonwealth v. Dougalewicz**, 113 A.3d 817 (Pa. Super. 2015), in support).  The Commonwealth concludes that this was not a "fishing expedition" and that the "items sought were as specifically identified as was reasonable" based on what the police knew about the crash.  *Id.* at 25.

The trial court's Rule 1925(a) opinion refers this Court to its February 28, 2019 order.  Trial Ct. Op. at 14-15.  In its February 28, 2019 order, the trial court briefly reasoned that the "search warrant was not overly broad because it was limited to the records generated following" Appellant's admission to the hospital.  Order, 2/28/19, at 3-4.

The standard and scope of review for a suppression ruling follows: "our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations."  **In re L.J.**, 79 A.3d 1073, 1080 n.6 (Pa. 2013).  "[O]ur standard of review of the suppression court's legal conclusions is *de novo*: appellate courts give no deference to the

suppression court's legal conclusions." *Id.* (citation omitted). Moreover, "[a]s for the record, we are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." *Id.* at 1080 (citations and footnote omitted).

Further,

We do not look to evidence "of record" at other stages of the proceedings, such as sentencing. Similarly, in the scenario presented *sub judice*, it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing.

*Id.* at 1085.

The Pennsylvania Rules of Criminal Procedure include the following requirement:

(A) Each search warrant shall be signed by the issuing authority and shall:

\* \* \*

(2) identify specifically the property to be seized;

Pa.R.Crim.P. 205(A)(2). The comment to paragraph (A)(2) states that the subsection is

intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description may suffice.

*Id.* cmt. (citation omitted).

This Court has stated:

The Pennsylvania Supreme [Court] has concluded Article 1, Section 8 of the Pennsylvania Constitution affords greater protection than the Fourth Amendment, including a more demanding particularity requirement; the description must be as particular as reasonably possible. The twin aims of Article 1, Section 8 are the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause.

In order to protect these twin aims, a warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described precise enough to enable the executing officer to ascertain and identify, with reasonable effort the place intended, and where probable cause exists to support the search of area so designated a warrant will not fail for lack of particularity.

*Commonwealth v. Korn*, 139 A.3d 249, 253-54 (Pa. Super. 2016) (citations omitted and formatting altered). Simply, a "warrant is unconstitutional under the Fourth Amendment for its overbreadth if it is broader than can be justified by the probable cause on which the warrant is based." *Commonwealth v. Santner*, 454 A.2d 24, 26 (Pa. Super. 1982) (citation omitted and formatting altered).

For example, in *Grossman*, our Supreme Court addressed "whether a warrant that authorized the seizure of 'all insurance files, payment records, receipt records, copies of insurance applications and policies, and cancelled checks' is unconstitutional . . . because it failed to describe with particularity the precise files to be seized." *Grossman*, 555 A.2d at 897 (formatting

altered). Ultimately, the ***Grossman*** Court concluded that while probable cause existed for the three specific files named in the affidavit of probable cause, it did not exist for the files of the insurance company's 2,000 clients. ***Id.*** at 900. Therefore, the Court held that "the warrant . . . was unconstitutionally overbroad in its failure to describe as specifically as was reasonably possible the three files described in the affidavit for which there was probable cause." ***Id.***

Similarly, in ***Commonwealth v. Rega***, 933 A.2d 997 (Pa. 2007), our Supreme Court considered a defendant's appeal involving an allegedly overbroad search warrant involving Jefferson County jury documents. ***Rega***, 933 A.2d at 1010. The defendant asserted that because the affidavit of probable cause "identified only jury questionnaires and lists," the issuing authority erred by granting a broadened warrant outside of the "four corners of the affidavit of probable cause" that included "Jury Questionnaires, Jury List[s], and any and all papers, documents containing the names of prospective jurors." ***Id.*** at 1010-11. Therefore, the defendant contended that the trial court abused its discretion by "admitting evidence obtained from an overly broad search warrant." ***Id.*** at 1011.

In resolving the defendant's claim, the ***Rega*** Court set forth the following guidelines:

> A search warrant cannot be used as a general investigatory tool to uncover evidence of a crime. Nor may a warrant be so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize,

- 15 -

which would result in the general rummaging banned by the Fourth Amendment. Thus, Pa.R.Crim.P. 205 specifies the necessary components of a valid search warrant. The comment to Rule 205 provides, however, that even though general or exploratory searches are not permitted, search warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice. Embracing this approach, we have held that where the items to be seized are as precisely identified as the nature of the activity permits the searching officer is only required to describe the general class of the item he is seeking.

A warrant is defective when its explanatory narrative does not describe as clearly as possible those items for which there is probable cause to search. In assessing the validity of a description contained in a warrant, a court must initially determine for what items there was probable cause to search. The sufficiency of the description in the warrant must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause to search and the description in the warrant requires suppression.

*Id.* at 1011-12 (citations omitted and formatting altered). Additionally, unlike the overbroad warrant in *Grossman*, the *Rega* Court held that the affidavit at issue "provided probable cause to believe that evidence of a crime would be found in all documents and papers containing juror information, and the warrant plainly was tailored to permit seizure of those papers pertaining to jurors." *Id.* at 1013.

In *Sherwood*, the defendant challenged two search warrants as overbroad. *Sherwood*, 982 A.2d at 504. Specifically, each of the warrants at issue sought "[a]ny and all evidence" related to injuries sustained by the four-year-old victim. *Id.* After quoting from *Rega*, 933 A.2d at 1011-12, the

- 16 -

*Sherwood* Court agreed with the suppression court that the "warrants were not overbroad because they described the items police were seeking as nearly as possible under the circumstances." *Id.* at 504. Further, the *Sherwood* Court reasoned that "since the evidence police were seeking included evidence of physical injury, the warrant had to be sufficiently broad to encompass all of the items that possibly could contain material of evidentiary value." *Id.*; *see also Dougalewicz*, 113 A.3d at 821, 828 (finding that a search warrant seeking "[a]ny and all text messages, picture mail, and phone calls to and from" the defendant's phone was not overly broad because the affidavit of probable cause specifically limited the time frame for the phone records to be searched and "sufficiently identified and limited the items to be searched and seized . . . .").

> With respect to medical records, we have stated the following:
>
> Courts of this Commonwealth have consistently recognized that an individual has a substantial privacy interest in his medical records.
>
> We note, however, that although an individual has an expectation of privacy in his medical records, this privacy interest does not preclude all searches and seizures of medical records. The proper function of Art. I, § 8 of the Pennsylvania Constitution, is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. Therefore, an individual's privacy interest in his medical records is subject to reasonable searches and seizures.

*Commonwealth v. Miller*, 996 A.2d 508, 512 (Pa. Super. 2010) (*en banc*) (citations omitted and formatting altered).

In ***Commonwealth v. Kuhn***, 2775 EDA 2018, 2019 WL 4338227 (Pa. Super. filed Sept. 12, 2019) (unpublished mem.),[10] *appeal denied*, 225 A.3d 1097 (Pa. 2020), the defendant was convicted of, *inter alia*, third-degree murder and DUI after a two-vehicle crash. ***Kuhn***, 2019 WL 4338227 at *1. The police submitted an affidavit of probable cause for a search warrant for the defendant's medical records from the hospital that treated the defendant's injuries from the crash. ***Id.*** at *3. The defendant argued that the trial court should have granted his motion to suppress the medical records because the affidavit was overbroad and "failed to describe the items to be seized with the requisite specificity." ***Id.*** at *13 (citation omitted). The ***Kuhn*** Court disagreed with the defendant and found no basis to conclude that the warrant was overbroad because the

> affidavit of probable cause indicated [the defendant] drove erratically, caused a car crash that resulted in the child being ejected from his vehicle, and then fled the scene without any apparent concern for the child. Based on these allegations, we agree with the trial court that the magistrate had a substantial basis to find a fair probability that [the defendant's] medical records from [the] Hospital could contain evidence regarding [the defendant's] conduct and state of mind before, during, and after the crash.

***Id.*** at *15 (citation omitted).

---

[10] As an unpublished memorandum decision filed after May 1, 2019, it may be cited for its persuasive value only. ***See*** Pa.R.A.P. 126.

Instantly, we agree with the Commonwealth that the search warrant was not overbroad. *See Korn*, 139 A.3d at 253-54. After summarizing his investigation, which included the victim's .199 BAC, Officer Wolfe's affidavit requested Appellant's medical records "to determine if alcohol and/or drug impairment was a factor," because they would "contain evidence of blood draws and blood testing . . . ." Aff. of Probable Cause. The warrant sought "all medical records" of Appellant, including "laboratory reports" limited to Appellant's hospitalization due to the crash. Appl. for Search Warrant.

These facts are similar to those in *Rega*, in which the affidavit of probable cause identified "juror questionnaires/lists" while the warrant was for "any and all papers, documents containing the names of prospective jurors." *See Rega*, 933 A.2d at 1010. Here, the affidavit averred "probable cause to believe the medical records will contain evidence of blood draws and blood testing which would be material evidence," while the warrant was for "all medical records." *See* Aff. of Probable Cause; Appl. for Search Warrant. Therefore, similar to the *Rega* Court, we conclude that the affidavit "provided probable cause to believe that evidence of a crime would be found in all" of Appellant's medical records, including evidence of blood draws and blood testing. *See id.* Although the affidavit did not aver "that evidence of criminal activity was likely to result" from a search of medical records unrelated to Appellant's toxicology, that is not an "unreasonable discrepancy between the

items for which" probable cause existed and the requested items in the warrant. **See Rega**, 933 A.2d at 1012.

We also agree with the Commonwealth that the warrant properly specified the items to be searched. Unlike the defective warrant in **Grossman**, which sought all records relating to an incident involving only three clients, the instant warrant requested Appellant's medical records directly related to his hospitalization from the crash. **Cf. Grossman**, 555 A.2d at 900. Further, to paraphrase the **Sherwood** Court, since the police sought all medical records from Appellant's hospitalization containing evidence of Appellant's blood tests, "the warrant had to be sufficiently broad to encompass all of the items" of evidentiary value. **See Sherwood**, 982 A.2d at 504; **accord Dougalewicz**, 113 A.3d at 828 (holding that warrant limiting time and content of records to be searched "sufficiently identified and limited the items to be searched and seized").

Finally, we are persuaded by this Court's decision in **Kuhn**, in which this Court found no basis to conclude that a warrant seeking the defendant's medical records for injuries sustained from a car crash was overbroad, but was rather supported by an affidavit of probable cause describing the defendant's involvement in that crash. **See Kuhn**, 2019 WL 4338227 at *3, 15.

For these reasons, we disagree with Appellant that the warrant was unconstitutional, and therefore, no relief is due. **See Korn**, 139 A.3d at 253-54; **Miller**, 996 A.2d at 512.

## 2. Insufficient Probable Cause

In support of Appellant's second issue, he argues that the search warrant was unsupported by probable cause. Appellant's Brief at 26. Appellant contends that the averred facts in Officer Wolfe's affidavit, *i.e.*, the vehicle's high rate of speed, lack of brake markings, and wet roadway "in and of itself, [were not] sufficient to establish probable cause to believe" Appellant was impaired. **Id.** at 27-28. Moreover, Appellant challenges the averments in the officer's affidavit regarding the passenger's toxicology report indicating a "blood ethanol of .199%," claiming instead that the report established that he was serving as a designated driver "before hydroplaning into oncoming traffic on a rain-slicked roadway." **Id.** at 28-29. Therefore, in Appellant's view, the issuing magistrate lacked a "substantial basis" to conclude "a fair probability" that evidence of a crime would be found in Appellant's medical records. **Id.**

The Commonwealth counters that the affidavit contained sufficient information to establish probable cause. Commonwealth's Brief at 28. The Commonwealth summarizes the affidavit, reiterates Officer Wolfe's experience and testimony from the suppression hearing, and emphasizes that the search warrant "specifically requested . . . All Medical Records, to include laboratory

reports of [Appellant] from admission date of 08/14/2016 to UPMC Mercy Hospital as result of a vehicle crash." *Id.* at 28-30. Because of this, the Commonwealth concludes that the trial court correctly held that probable cause existed to support the search warrant. *Id.*

The trial court's Rule 1925(a) opinion directed this Court to its February 28, 2018 order in which it summarized Officer Wolfe's background and facts within the affidavit of probable cause. Trial Ct. Op. at 14; Order, 2/28/18, at 2. Ultimately, the trial court held that the affidavit "contained sufficient information in its four corners to establish probable cause that" Appellant was impaired to justify issuance of the warrant. *Id.*

"Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018) (citation omitted). "Probable cause is based on a finding of probability and does not require a *prima facie* showing of criminal activity." *Commonwealth v. Huntington*, 924 A.2d 1252, 1256 (Pa. Super. 2007) (citation omitted). "[T]he police need not rule out all other possibilities in establishing probable cause for the issuance of a search warrant." *Commonwealth v. Rapak*, 138 A.3d 666, 672-73 (Pa. Super. 2016) (citation omitted).

Our Supreme Court has stated:

The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Commonwealth v. Housman*, 986 A.2d 822, 843 (Pa. 2009) (citation omitted and formatting altered). Moreover, we are mindful that

[t]he Supreme Court of the United States has instructed that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. Indeed, a magistrate's probable cause determination should receive deference from the reviewing courts. In keeping with the Fourth Amendment's strong preference for warrants, courts should not invalidate warrants by interpreting affidavits in a hyper-technical, rather than a commonsense, manner.

*Leed*, 186 A.3d at 413 (citations omitted and formatting altered); *accord* Pa.R.Crim.P. 205(A)(2) cmt.

Here, the record supports the issuing authority's determination that it had a substantial basis for concluding probable cause existed. *See Leed*, 186 A.3d at 413; *Housman*, 986 A.2d at 843. As set forth above, the affidavit established the following facts: a fatal accident occurred, a victim with a whole blood ethanol of .199% died because of the injuries that she suffered in the accident, and an interview with the victim's daughter confirmed that the victim was with Appellant at a bar. *See* Aff. of Probable Cause. Officer Wolfe stated that based on those facts, his training, and his experience, he believed there was probable cause that Appellant's medical records would contain evidence of a crime. *Id.* The issuing authority agreed with Officer Wolfe, and we agree

it "had a substantial basis for concluding that probable cause existed." **See Housman**, 986 A.2d at 843 (formatting altered); **Kuhn**, 2019 WL 4338227 at *3. As the **Rapak** Court noted, the police did not need to rule out that "all other possibilities" before requesting a warrant. **See Rapak**, 138 A.3d at 672-73. Accordingly, Appellant's claim fails.

### 3. Failure to Reflect Awareness of Sentencing Guidelines

Before summarizing Appellant's argument in support of his third issue, we set forth the following as background. In relevant part, at Appellant's sentencing hearing, the trial court stated Appellant's convictions and the maximum possible sentences. N.T. Sentencing Hr'g, 9/25/18, at 3-5. The trial court stated it read the presentence investigation report three times prior to Appellant's sentencing hearing. **Id.** at 6. Appellant gave an allocution and the trial court imposed the sentence. **Id.** at 39-40. In imposing the sentence, the trial court only referenced "the standard range of the guidelines" for Count 6.[11] **Id.** at 39.

Appellant's post-sentence motion challenged the court's failure to "put adequate reasons on the record for departing from the standard range of the Sentencing Guidelines" for Count 2, which was the homicide by vehicle with a

_____

[11] Specifically, the trial court stated, "At Count 6, sir, you will serve a period of three to six months in the Allegheny County Jail, which is in the standard range of the guidelines." N.T. Sentencing H'rg at 39.

DUI conviction. Appellant's Suppl. Post-Sentence Mot. at 9. Appellant's Rule 1925(b) statement contained similar assertions.

On appeal, Appellant raises several challenges to the discretionary aspects of his sentence. Appellant's Brief at 35. Appellant asserts that the trial court failed to state on the record "the permissible range of sentences under the guidelines and the factual basis and specific reasons which compelled it to deviate from" that range with respect to his five-to-ten-year statutory maximum sentence for Count 2. *Id.* (citation omitted and formatting altered). Appellant analogizes his case to ***Commonwealth v. Rich***, 572 A.2d 1283 (Pa. Super. 1990), concluding that this Court must similarly vacate his sentence and remand for resentencing. *Id.* at 42.

The Commonwealth counters that to the extent the trial court "erroneously failed to recite the sentencing guideline ranges," that was "not reversible error." *Id.* at 40-42 (citing, *inter alia*, ***Commonwealth v. Rodda***, 723 A.2d 212, 213 (Pa. Super. 1999) (*en banc*), ***Commonwealth v. Antidormi***, 84 A.3d 736 (Pa. Super. 2014), and ***Commonwealth v. Macias***, 968 A.2d 773 (Pa. Super. 2009)).

The trial court's Rule 1925(a) opinion did not address Appellant's argument about the failure to state the sentencing guideline ranges. The trial court noted that it had the benefit of a PSI, which it reviewed three times, and therefore considered "all of the relevant sentencing factors," including the mitigating evidence. Trial Ct. Op. at 20.

- 25 -

It is well settled that

[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[ ] § 9781(b).

*Commonwealth v. Proctor*, 156 A.3d 261, 273 (Pa. Super. 2017) (some citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

Instantly, Appellant has preserved his sentencing issues in a post-sentence motion, a timely appeal, and a Rule 2119(f) statement in his brief. *See id.* Furthermore, Appellant's claim that the trial court "failed to state sufficiently its reasons for imposing sentence outside the sentencing guidelines" states "a substantial question for our review." *Rodda*, 723 A.2d at 214 (citation omitted); *see also Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011) (stating, "to the extent that [the defendant's] claim impugns the trial court's failure to offer specific reasons for the sentence

that comport with the considerations required in section 9721(b) . . . it raises

a substantial question"). We therefore address the merits of Appellant's claim.

By way of guidance:

Where, as here, a court imposes a sentence outside of the Sentencing Guidelines, the court must provide, in open court, a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S. § 9721(b).

**A sentencing judge must demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines.** Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Commonwealth v. Beatty*, 227 A.3d 1277, 1287-88 (Pa. Super. 2020)

(some citations omitted and formatting altered).

In *Rich*, the trial court imposed statutory maximum sentences but

"neither advised [the defendant] of the applicable guideline ranges, nor stated

its reasons for deviating from those guidelines." *Rich*, 572 A.2d at 1286.

Therefore, on appeal, the *Rich* Court vacated the sentences at issue and

remanded for resentencing. *Id.*

In *Rodda*, the defendant pled guilty and the trial court imposed

sentences that it acknowledged "exceeded the standard range of the

sentencing guidelines." *Rodda*, 723 A.2d at 213. At the sentencing hearing,

the trial court "recognized the role of the guidelines in suggesting an

appropriate sentence," but prior to imposing sentence, merely stated, "I have determined . . . that it's appropriate to sentence [the defendant] above the guideline range." *Id.* at 217 (citations and quotation marks omitted). The trial court was mistaken, however, as "the sentence actually imposed did not depart from the applicable guideline ranges." *Id.* The trial court denied the defendant's post-sentence motion, and the defendant appealed. *Id.* at 213.

On appeal, the defendant argued that the trial court failed to "state the permissible range of sentencing under the guidelines prior to imposing sentence . . . ." *Id.* (quotation marks omitted). Ultimately, the *Rodda* Court agreed with the defendant, holding that although "the court recognized the role of the guidelines in suggesting an appropriate sentence, it failed to demonstrate its understanding of the applicable sentencing ranges under the guidelines." *Id.* at 217 (citation omitted). The *Rodda* Court therefore vacated the judgment of sentence and remanded to have the trial court "clearly identify whether the sentence it wishe[d] to impose [was] meant to be a departure from the guidelines or a sentence in the aggravated range." *Id.* at 218.

In *Beatty*, the trial court acknowledged reviewing a PSI, did not mention any of the guideline ranges, and stated that for various reasons, which we do not reiterate here, the defendant "will be sentenced **in the aggravated range** to punish, to deter him, to deter others from engaging in a lifetime of criminal conduct . . . ." *Beatty*, 227 A.3d at 1289 (emphasis in

original and citation omitted). The ***Beatty*** Court explained that although the trial court "provided its reasons for the sentence at sentencing, these reasons were advanced to support a sentence in the aggravated range. Nowhere did the court indicate that it was in fact sentencing [the defendant] outside of the guidelines, nor did it provide a contemporaneous statement of its reasons for such deviation." ***Id.*** at 1290. The ***Beatty*** Court therefore vacated the judgment of sentence and remanded for resentencing. ***Id.*** at 1290-91.

Instantly, we note that prior to sentencing Appellant, the trial court mentioned the maximum possible sentences but did not mention the sentencing guideline ranges. ***See*** N.T. Sentencing Hr'g, 9/25/18, at 3-6. As Appellant accurately points out, the trial court failed to set forth on the record "the permissible range of sentences under the guidelines."[12] Appellant's Brief at 35. The facts of this case are, therefore, akin to the facts in ***Beatty***, ***Rodda***, and ***Rich***.

Identical to the trial court in ***Beatty***, the instant trial court acknowledged reviewing a PSI but failed to mention any of the guideline ranges. ***See Beatty***, 227 A.3d at 1289-90. Similarly, the ***Rodda*** and ***Rich*** Courts vacated the judgments of sentence and remanded for resentencing

---

[12] As we noted above, the trial court's only reference to the guidelines at the time of sentencing occurred when the court sentenced Appellant on Count 6 to three to six months' imprisonment, "which is in the standard range of the guidelines." N.T. Sentencing at 39.

after the trial courts failed to inform the defendant of the "applicable guideline ranges," *i.e.*, "the permissible range of sentencing under the guidelines." **See Rodda**, 723 A.2d at 213; **Rich**, 572 A.2d at 1286. We are similarly constrained to vacate Appellant's judgment of sentence and remand for resentencing.[13] **See, e.g.**, **Beatty**, 227 A.3d at 1289-91.

## 4. Double Jeopardy

Before summarizing Appellant's argument for his final issue, we set forth the following background. On March 16, 2017, the Commonwealth filed a criminal information against Appellant listing numerous counts, including two counts of DUI-general impairment. Specifically, Count 8 charged Appellant with violating "Section 3802(a)(1); Section 3803(b)(3) and Section 3804(b)(3) of the Pennsylvania Vehicle Code." Crim. Information, 3/16/17, at 4. Count 9 charged Appellant with violating "Section 3802(a)(1); Section 3803(a)(2) and Section 3804(a)(3) of the Pennsylvania Vehicle Code." **Id.** at 5.

Further, at Appellant's hearing on his post-sentence motions, the trial court vacated sentences of "no further penalty" it had imposed for Counts 8

---

[13] Appellant's argument was limited to Count 2. The Commonwealth also cited **Antidormi**, which did not address the argument Appellant raises here, namely that the trial court failed to indicate its awareness of the applicable sentencing guidelines. **See Antidormi**, 84 A.3d at 759-60. Finally, the Commonwealth cited **Macias**, which is inapposite to the instant case because the defendant in **Macias** was not sentenced above the aggravated range of the Sentencing Guidelines. **See Macias**, 968 A.2d at 777.

and 9 and replaced the sentences with "guilty but merged." N.T. Post-Sentence Mot., 1/10/19, at 4-5. With respect to these counts, Appellant's counsel argued that ***Commonwealth v. Farrow***, 168 A.3d 207 (Pa. Super. 2017), provides, "the proper remedy . . . is actually to vacate the second conviction in its entirety rather than reflect those [two counts] merging." N.T. Post-Sentence Mot. at 5. The Commonwealth initially disagreed, arguing that Appellant's counsel was relying on *dicta* in ***Farrow***. After hearing further argument, the trial court stated it was "just going to vacate the sentences on them and not vacate the actual count nine" conviction. ***Id.*** at 7.

The trial court's Rule 1925(a) opinion explains that it did not believe that ***Farrow*** stands "for the proposition that multiple **convictions** violate the principles of double jeopardy." Trial Ct. Op. at 27 (emphasis in original). The trial court acknowledges the ***Farrow*** Court's commentary in a footnote that a "second conviction is an impermissible punishment even if it results in no greater sentence," but opines that this commentary was mere *dicta*. ***Id.*** The trial court concludes that because Appellant's "conviction at Count 9, for which no sentence at all was imposed, does not run afoul of the Double Jeopardy Clauses of the state or federal constitution." ***Id.***

On appeal, Appellant argues that under ***Farrow***, and ***Commonwealth v. Bezick***, 207 A.3d 400 (Pa. Super. 2019), this Court must vacate his DUI conviction at Count 8, and remand for resentencing on the DUI conviction at Count 9. Appellant's Brief at 53 & 53 n.1. Appellant summarizes ***Farrow*** and

notes that his offenses under Count 8 and Count 9 represent "the legally and factually identical allegation," that he violated 75 Pa.C.S. § 3802(a)(1). *Id.* at 54 (citation omitted). Moreover, Appellant notes that in *Bezick*, the Court held "that a double jeopardy violation occurs even when convictions merge for sentencing purposes." *Id.* at 57 (summarizing *Bezick*).

In response, the Commonwealth revised its argument and stated that because "the sentencing order purports to impose a sentence for two identical counts of section 3802(a)(1)[,] it would appear to violate this Court's precedent." Commonwealth's Brief at 43-44 (citing *Bezick* and *Farrow*). Therefore, the Commonwealth "acknowledges that there may be a basis for this Court to vacate the conviction at Count 8" consistent with *Bezick* and *Farrow* because the instant case is factually analogous. *Id.* at 45.

In reviewing this claim, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Kuykendall*, 2 A.3d 559, 563 (Pa. Super. 2010) (citation omitted).

In *Farrow*, the defendant was driving when she struck two parked vehicles, fled the scene, and subsequently refused a breath/blood alcohol test. *Farrow*, 168 A.3d at 208-09. The Commonwealth filed a four-count information against the defendant, which in relevant part included the following: count one was for DUI-general impairment under 75 Pa.C.S. §§ 3802(a)(1) and 3804(c) for refusing a breath/blood alcohol test, count two was for DUI-general impairment under 75 Pa.C.S. §§ 3802(a)(1) and 3804(b)

for accident resulting in damage to a vehicle, and count three was for DUI-general impairment under 75 Pa.C.S. § 3802(a)(1). *Id.* Following a bench trial and conviction on all counts, the trial court sentenced the defendant to three to six days' incarceration for count one and "guilty without further penalty" for the remaining counts. *Id.* at 210.

The defendant timely appealed, arguing that the trial court violated her protection against double jeopardy. *Id.* Ultimately, the **Farrow** Court held that the trial court erred because it "imposed three separate sentences at three counts that each alleged, at bottom, a single criminal act in violation of the same criminal statute." *Id.* at 216 (footnote omitted). As a result, the **Farrow** Court vacated the defendant's convictions and sentences for counts one and two, affirmed the conviction at count three, but remanded for resentencing for count three. *Id.* at 219.

Subsequently, in **Commonwealth v. Hill**, 238 A.3d 399 (Pa. 2020), our Supreme Court disapproved of the Superior Court's reasoning in **Farrow**. **Hill**, 238 A.3d at 406 n.5. Briefly, like the defendants in **Farrow** and **Bezick**, the defendant in **Hill** was convicted of two counts of DUI-general impairment for a single incident. **Hill**, 238 A.3d at 402; **Bezick**, 207 A.3d at 402; **Farrow**, 168 A.3d at 210. In relevant part, the **Hill** defendant raised a double jeopardy claim for the first time in his petition for allowance of appeal. *Id.* at 404. He argued that he did not waive his double jeopardy claim because such a claim implicated the legality of his sentence. **Hill**, 238 A.3d at 404 (citing, *inter*

*alia*, **Farrow**). In response, the Commonwealth argued, among other things, that our Supreme Court should disapprove of "**Farrow's** result in conformity with the reasoning the [**Farrow** C]ourt employed in the body of its opinion . . . ." *Id.* at 406.

Our Supreme Court agreed with the Commonwealth, and disapproved of **Farrow's** result as inconsistent with its reasoning:

> The **Farrow** [Superior C]ourt's decision to vacate two of Farrow's DUI convictions is curious, as the court asserted in its opinion that, while it is clear that double jeopardy shields defendants from multiple punishments for the same offense, there is no Pennsylvania authority for the proposition that double jeopardy precludes multiple convictions for the same offense. Further, the court seemingly refused to adopt the position that double jeopardy protections preclude multiple convictions for the same offense.

*Id.* at 406 n.5 (citations omitted and formatting altered).

Instantly, Appellant, much like the defendants in **Farrow**, **Bezick**, and **Hill**, was charged with two counts of DUI-general impairment under Section 3802(a)(1) for the same criminal act. Unlike the defendant in **Hill**, Appellant preserved his double jeopardy challenge. The **Hill** Court, however, disapproved of the **Farrow** Court's reasoning, which the **Bezick** Court adopted, and therefore we must also reject Appellant's argument that double jeopardy precluded multiple convictions for the same DUI offense.[14] **See Hill**, 238 A.3d at 406 n.5. Therefore, Appellant is due no relief on this issue.

_____

[14] Although double jeopardy does not preclude Appellant's convictions for Counts 8 and 9, double jeopardy does bar multiple punishments for the same

- 34 -

## **Conclusion**

For these reasons, we affirm the convictions, vacate the judgment of sentence, and remand for resentencing on all counts.[15]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/20/2021

_____

offense.  **See Hill**, 238 A.3d at 411.  For Counts 8 and 9, the instant trial court had imposed sentences of "guilty but merged" with Count 2 for sentencing purposes, which are not illegal sentences.  **See generally** 42 Pa.C.S. § 9721 (identifying the sentences a court may impose); **Commonwealth v. Wade**, 33 A.3d 108, 116 (Pa. Super. 2011) (explaining that merged offenses do not violate double jeopardy).

[15] Because of our mandate, we need not address Appellant's claim that his aggregate sentence was excessive.  **See** Appellant's Brief at 43.

Further, although we do not believe vacating the judgment of sentence only at Count 2 would disturb the trial court's overall sentencing scheme, out of an abundance of caution, we vacate the entire judgment of sentence.  **See Commonwealth v. Vanderlin**, 580 A.2d 820, 831 (Pa. Super. 1990) (holding, "if a trial court errs in its sentence for one count in a multi-count case, then all sentences for all counts will be vacated so that the court can re-structure its entire sentencing scheme" (citation omitted)); **accord Commonwealth v. Williams**, 871 A.2d 254, 266 (Pa. Super. 2005).

- 35 -